**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL PONEMAN,** | ) | |
| | ) | **Civil Action No.: 1:13-cv-08809** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Charles R. Norgle, Sr.** |
| | ) | |
| **NIKE, INC.,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **FOOT LOCKER, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. SUMMARY OF MATERIAL FACTS ..... 1
A. Plaintiff's Activities Before NIKE's First T-shirt Sale in March 2013 ..... 1
1. Plaintiff's Focus On Basketball ..... 1
2. Plaintiff's Choice of "swagair" and Failure to Register the Term ..... 2
3. Plaintiff Did Not Execute On His Plans ..... 2
a. Two Small Showcases in 2010 and 2011 ..... 3
b. Plaintiff's Limited and Inconsistent Internet Activities ..... 4
4. Plaintiff Abandoned His Plans in Early 2012 ..... 5
B. Background Relevant to NIKE's T-shirt ..... 6
III. ARGUMENT ..... 7
A. Summary Judgment Standard ..... 7
B. Plaintiff Cannot Prove He Owned Enforceable Common Law Trademark Rights in the Term "swagair" as of Defendants' First T-shirt sale in March 2013 ..... 8
1. Plaintiff Failed to Demonstrate Market Penetration Anywhere for Any Goods or Services ..... 9
a. Two Showcases in 2010 and 2011 ..... 10
b. Internet Activities ..... 10
2. Plaintiff Changed Focus Away From The "SwagAir" Business ..... 11
C. Defendants' Use of "swag air" Was Not Likely to Cause Confusion ..... 12
1. Marketplace Uses of the Terms Not Similar in Appearance ..... 13
2. No similarity in products ..... 14
3. No overlap in the area and manner of the parties' concurrent use ..... 15
4. Plaintiff's asserted common law mark is weak ..... 15
5. There is no credible evidence of actual confusion ..... 17

6. Defendants had no intent to overwhelm Plaintiff's claimed mark ....................18

7. Degree of care likely to be exercised by consumers ....................18

8. Summary regarding reverse confusion ....................19

9. Plaintiff Fails to Prove Forward Confusion ....................19

IV. CONCLUSION ....................20

## TABLE OF AUTHORITIES

**Cases**

*AutoZone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) .......................... 12, 16

*Best Vacuum, Inc. v. Ian Design, Inc.*,
2006 U.S. Dist. LEXIS 87260 (N.D. Ill. Nov. 21, 2006) .......................... 7

*Brandt Indus., Inc. v. Pitonyak Machinery Corp.*,
No. 1:10-cv-0857-TWP-DML, 2012 WL 3777145 (S.D. Ind. Aug. 29, 2012) .......................... 9

*Burger King of Fla., Inc. v. Hoots*,
403 F.2d 904 (7th Cir. 1968) .......................... 9

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*,
83 F.3d 169 (7th Cir. 1996) .......................... 7

*Eli Lilly & Co. v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) .......................... 13, 16

*Flagstar Bank, FSB v. Freestar Bank*,
687 F.Supp.2d 811 (C.D. Ill. 2009) .......................... 16

*G. Heileman Brewing Co. v. Anheuser –Busch, Inc.*,
873 F.2d 985 (7th Cir. 1989) .......................... 18

*Gimix Inc. v. JS & A Group Inc.*,
699 F.2d 901 (7th Cir. 1983) .......................... 16

*Glow Industries, Inc. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002).......................... 9

*Humanly Possible, Inc. v. Manpower, Inc.*,
No. 11 C 4977, 2013 WL 633332 (N.D. Ill. Feb. 19, 2013).......................... 13

*Hydrox Chem. Co. v. Diversey Inc.*,
No. 1:13-cv-07024, 2015 U.S. Dist. LEXIS 36276 (N.D. Ill. Mar. 23 2015 .......................... 17, 18

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
188 F.3d 427 (7th Cir. 1999) .......................... 8, 10

*Knaack Mfg. Co. v. Rally Accessories, Inc.*,
955 F. Supp. 991 (N.D. Ill. 1997) .......................... 17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).......................... 7

*Microsoft Corp v. Rechanik*, 249 Fed.Appx. 476, 479 (7th Cir. 2007) .......................... 8

*Minemyer v. B-Roc Representatives, Inc.*, 678 F. Supp. 2d 691, 711–12 (N.D. Ill. 2009)........................................................................................................ 8

*Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) ........................................................................................................ 8

*Optimal Pet, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953 (C.D. Cal. 2012)................................................................................ 9

*Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001) ........................................................................ passim

*Ponsetti v. GE Pension Plan*, 614 F.3d 684 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c).................................................. 7

*S Indus., Inc. v. JL Audio, Inc.*, 29 F. Supp. 2d 878 (N.D. Ill. 1998) ....................................................................... 15

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ........................................................................... 19

*Specht v. Google Inc.*, 758 F. Supp. 2d 570 (N.D. Ill. 2010), *aff'd*, 747 F.3d 929 (7th Cir. 2014) ............. 8, 10, 11

*Sullivan v. CBS Corp.*, 385 F.3d 772 (7th Cir. 2004) ........................................................................... 15

*Tsiolis v. Interscope Records*, 946 F. Supp. 1344 (N.D. Ill. 1996)........................................................... 13, 14, 18

*Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891 (7th Cir. 2001) ..................................................................... 7, 13, 15

*Wm. Wrigley Jr. Co., v. Swerve IP, LLC*, 900 F.Supp.2d 794 (N.D. Ill. 2012) ...................................................................... 13

*WNS Inc. v. Deck the Walls Inc.*, No. 84 C 3880, 1986 WL 83472 (N.D. Ill. May 5, 1987) .................................................. 8

*Zazu Designs v. L'oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992) ......................................................................... 8, 9

## I. INTRODUCTION

Plaintiff Daniel Poneman ("Plaintiff") alleges that NIKE, Inc.'s and Foot Locker, Inc.'s ("NIKE" and "Foot Locker," respectively) use of the words "swag air" along with other NIKE trademarks on a t-shirt (hereinafter the "NIKE t-shirt"), constituted infringement of purported common law trademark rights in the term "swagair." Plaintiff does not own a federal trademark registration for that term and the undisputed evidence demonstrates that he never created any common law rights in the term. Whatever use he did make was exceedingly small scale, localized, intermittent, inconsistent and not as a trademark. Even if Plaintiff could show that he created at least some limited enforceable rights in "swagair," the undisputed evidence further confirms that Defendants' sale of the NIKE t-shirt did not create any likelihood of confusion as to the source of the parties' goods and services. For these reasons, summary judgment should be granted in favor of NIKE and Foot Locker.

## II. SUMMARY OF MATERIAL FACTS[1]

### A. Plaintiff's Activities Before NIKE's First T-shirt Sale in March 2013

Plaintiff claims that, by the time of NIKE's first sale of t-shirts in March 2013, Plaintiff had created enforceable trademark rights in the term "swagair." Far from creating enforceable trademark rights, Plaintiff essentially used "swagair" as a social media nickname, emphasizing more often than not his personal name. Moreover, a year before NIKE's first sale, Plaintiff had abandoned his plans for "swagair" goods and services and shifted to pursuits such as producing a documentary film.

#### 1. Plaintiff's Focus On Basketball

In 2006, Plaintiff started scouting Illinois high school basketball players. (SOF 1) [redacted]

[1] In support of their Motion for Summary Judgment, and pursuant to L.R. 56.1, Defendants are filing herewith a Statement of Material Facts as to which there is no Genuine Issue to be Tried ("SOF").

[redacted] (SOF 2)

[redacted] (SOF 3) [redacted] (SOF 4) [redacted] (SOF 5) [redacted] (SOF 6, 7)

**2. Plaintiff's Choice of "swagair" and Failure to Register the Term**

[redacted] (SOF 8, 9) a term NIKE itself had used before 2010 (SOF 53). Plaintiff combined the term "swag" with "air," a term he knew NIKE had used. (SOF 10)

[redacted] (SOF 12)

[redacted] (SOF 13)

**3. Plaintiff Did Not Execute On His Plans**

[redacted] (SOF 14) [redacted] (SOF 5, 15-19, 26, 41) [redacted] (SOF 42-48)

### a. Two Small Showcases in 2010 and 2011

[redacted] (SOF 15) [redacted] (SOF 16) [redacted] (SOF 17) [redacted] (SOF 18)

[redacted] (SOF 15, 16) [redacted] (SOF 17, 18)

[redacted] (SOF 21) [redacted] (SOF 22) [redacted] (SOF 21)




[redacted] (SOF 23, 26, 41)[2]

[redacted] (SOF 20) [redacted]

---

[2] Plaintiff's personal tax returns underscore that he was never serious about earning revenue from his sporadic "swagair" activities. [redacted] (SOF 19)

[redacted] (SOF 21, 23)

### b. Plaintiff's Limited and Inconsistent Internet Activities

Plaintiff claims to have used "swagair" in connection with a website at swagair.com, on YouTube and on Twitter, Instagram and Facebook, but he did not use these sites to advertise or sell goods or services and they often were vehicles for posts of personal content.

**Swagair.com**. [redacted] (SOF 24) [redacted] (SOF 25-26) and he presents no evidence that he ever sold any other merchandise at the site. [redacted] (SOF 27-28)

**YouTube**. [redacted] (SOF 8, 29) Plaintiff uploaded around 500 videos regarding high school basketball players between 2008 and March 2012. (SOF 30) The video titles typically included names of the featured players (SOF 31) and only 16% of the titles included the term "swagair" without Plaintiff's personal name. (SOF 32)

[redacted] (SOF 33). [redacted] (SOF 34) , [redacted] (SOF 35)

**Twitter, Instagram and Facebook**. [redacted]

[redacted] (SOF 36) Plaintiff's personal name appears on the Twitter site and in printouts from the account. (SOF 37)

Plaintiff's Instagram account, which he created in March 2012, also features his personal name. (SOF 38) Similarly, his Facebook accounts are under the names Daniel Poneman and SwagAir Poneman. (SOF 39)

Plaintiff uses his Twitter, Instagram and Facebook accounts for posts concerning personal matters. (SOF 40)

[redacted] (SOF 41), and there is no evidence he ever used "swagair" with these accounts to advertise or sell any services or that "swagair" had anything to do with drawing visits to the sites.

#### 4. Plaintiff Abandoned His Plans in Early 2012

[redacted] (SOF 30, 42, 58) [redacted] (SOF 15), [redacted] (SOF 43) [redacted] (SOF 44) [redacted] (SOF 45)

[redacted] (SOF 46-47) Plaintiff worked on the documentary in his own name (SOF 48), and there is no evidence he used "swagair" in any way to promote the project.

**B. Background Relevant to NIKE's T-shirt**

NIKE was using the terms "swag" and "air" long before Plaintiff decided to use the term "swagair." Since at least as early as 2008 until the present, NIKE also has used variations of the term "swag" as ornamental wording on clothing as well as for the name of clothing and other products, such as "King of Swag" and "Swagger." (SOF 52) The term "air" is heavily and instantly associated with NIKE. Indeed, from 1978 until the present, NIKE has included the word "air" in the name of many styles of shoes. (SOF 49) NIKE owns long-standing United States trademark registrations covering several "air" marks and has sold millions of t-shirts bearing the NIKE AIR mark in the United States. (SOF 50-51) NIKE also was using SWAGGER – the term Plaintiff claims he was trying to evoke– before Plaintiff thought of the term "swagair." (SOF 8, 9, 53)

[redacted] (SOF 54) [redacted] (SOF 55)

[redacted] (SOF 56) [redacted] (SOF 57), [redacted]

In March 2013 – a year after Plaintiff changed his activities (SOF 43) – Defendants began selling the NIKE t-shirt bearing the wording "swag air," with the word "swag" stacked above the term "air" and over the NIKE and Swoosh logo. (SOF 58) One color combination of the shirt is pictured here:



(SOF 58)

[redacted] (SOF 21, 22) [redacted] (SOF 42-48)

## III. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is proper when the moving party establishes "that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)). The non-moving party must demonstrate a genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Trademark claims may be disposed of on summary judgment where a trademark plaintiff fails to prove enforceable rights, or even if there are enforceable rights, where there is no likelihood of confusion. *See Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 170–71 (7th Cir. 1996); *Best Vacuum, Inc. v. Ian Design, Inc.*, 2006 U.S. Dist. LEXIS 87260, at *11–15 (N.D. Ill. Nov. 21, 2006) (plaintiff did not have a protectable mark); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (plaintiff failed to establish a likelihood of confusion); *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001) (plaintiffs must show

protectable rights and that defendant's use is likely to cause consumer confusion); *Zazu Designs v. L'oreal, S.A.*, 979 F.2d 499, 505 (7th Cir. 1992) (sales were insufficient to establish national trademark rights). In this case, summary judgment is appropriate for both reasons. The undisputed evidence demonstrates both that Plaintiff had not created enforceable rights in the term "swagair" by the time NIKE first placed "Swag Air" on a t-shirt, and even if there were enforceable rights, that there is no likelihood of confusion.[3]

### B. Plaintiff Cannot Prove He Owned Enforceable Common Law Trademark Rights in the Term "swagair" as of Defendants' First T-shirt sale in March 2013

Plaintiff must prove he owns protectable rights in his claimed mark. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999). To do so, he must prove he made sufficiently extensive and continuous use such that recognition of the term as a trademark penetrated the market in each jurisdiction where he claims rights. *See WNS Inc. v. Deck the Walls Inc.*, No. 84 C 3880, 1986 WL 83472, at *3 (N.D. Ill. May 5, 1987) ("it is a basic principle of trademark law that a trademark will receive protection only for areas in which it has established a reputation"); *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 586–588 (N.D. Ill. 2010), *aff'd*, 747 F.3d 929 (7th Cir. 2014) (use must be "sufficiently public to identify or distinguish the

---

[3] In addition to his claim under § 43(a) of the Lanham Act, Plaintiff also makes claims for Illinois common law infringement, violation of the Illinois Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act. As the gravamen of Plaintiff's claim relates to violation of rights he claims in his common law trademark, courts in the Seventh Circuit apply the same analysis to these ancillary state law claims that they apply to the Lanham Act claim. *See Minemyer v. B-Roc Representatives, Inc.*, 678 F. Supp. 2d 691, 711–12 (N.D. Ill. 2009); *Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005); *Microsoft Corp v. Rechanik*, 249 Fed.Appx. 476, 479 (7th Cir. 2007) ("Microsoft's state-law claims of consumer fraud, deceptive trade practices, and unfair competition based on trademark infringement are analyzed using the same standards as federal trademark claims"). Therefore, these claims should also be dismissed.

marked goods in an appropriate segment of the public mind as those of [the mark's owner]").

The touchstone inquiry for an unregistered mark is whether consumers in each relevant jurisdiction view the term as a designation of source for goods or services. *See Burger King of Fla., Inc. v. Hoots*, 403 F.2d 904, 907 (7th Cir. 1968) (trademark rights acquired in one area of the state of Illinois do not establish rights throughout Illinois); *Zazu Designs*, 979 F.2d at 503, 505 (use of asserted mark insufficient as a matter of law to establish national rights); *Optimal Pet, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 964 (C.D. Cal. 2012) (Internet sales of $35,000 over five years could not establish common law trademark rights in any geographical area); *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 983–86 (C.D. Cal. 2002) (insufficient evidence of sales volume to prove sufficient market penetration in any territory); *Brandt Indus., Inc. v. Pitonyak Machinery Corp*., No. 1:10-cv-0857-TWP-DML, 2012 WL 3777145, at *4 (S.D. Ind. Aug. 29, 2012) (plaintiff had common law rights in areas where it had several dealers and generated a million dollars annually, but not in states where it had only two dealers and failed to produce advertising and market share information).

Plaintiff's minimal, intermittent and erratic use of "swagair" was insufficient as a matter of law to establish common law rights to "swagair" in any geographic area or for any goods or services. Moreover, whatever use that Plaintiff could conceivably relate to any goods or services ended in 2012, when he changed the focus of his activities.

### 1. Plaintiff Failed to Demonstrate Market Penetration Anywhere for Any Goods or Services

Plaintiff's two showcases in 2010 and 2011, and his use of Internet locations to promote his personal name and brand (Daniel Poneman) could not possibly be enough to create enforceable trademark rights as of March 2013, when NIKE first sold a "Swag Air" t-shirt.

**a. Two Showcases in 2010 and 2011**

The two showcases in 2010 and 2011 were Plaintiff's only non-Internet activities before March 2013. [redacted] (SOF 15-17, 21-22). [redacted] (SOF 18) Such "use" was too small to establish common law trademark rights in Chicagoland or anywhere else. *See Specht v. Google Inc.*, 747 F.3d at 935 (one mass mailing and a failed bid to license software were "isolated and not sustained" and therefore insufficient to avoid a finding of abandonment).[4]

**b. Internet Activities**

Plaintiff's use of "swagair" in various Internet settings also failed to create enforceable rights. [redacted] (SOF 26, 33, 41) *Johnny Blastoff, Inc.*, 188 F.3d at 433-34 ("a party may acquire a protectable right in a trademark only through use of the mark in connection with its product").

[redacted] (SOF 29), most of the videos were titled with the names of the featured players (SOF 31), and only a small percentage of the titles included "swagair" without Plaintiff's personal name (SOF 32). [redacted] (SOF 34), suggesting that the names of players in the videos likely were the terms viewers used to locate videos. [redacted]

---

4 [redacted] (SOF 20) This showcase was too late to create any rights by the time of NIKE's "Swag Air" t-shirt in 2013.

[redacted] (SOF 42) [redacted] (SOF 42, 58)

Plaintiff claims he had a website at the domain name swagair.com, but he produced no evidence showing that anyone ever viewed the website, much less that anyone perceived "swagair" as a trademark indicating the source of Plaintiff's purported goods and services or that any visits were for a commercial purpose. *See Specht v. Google Inc.*, 747 F.3d at 934-35 (evidence of 800 to 2,900 monthly visits to a website failed to show sufficient trademark use where there was no evidence of any commercial interest associated with the visits). [redacted] (SOF 26), [redacted] (SOF 27)

Plaintiff's "swagair" Twitter, Instagram and Facebook addresses similarly failed to establish trademark use. [redacted] (SOF 41), and there is no evidence of any services he promoted through those sites or of the number of visitors to the sites. Plaintiff's posts on these sites were, and continue to be, frequently personal in nature. (SOF 40)

### 2. Plaintiff Changed Focus Away From The "SwagAir" Business

[redacted] (SOF 14), [redacted] (SOF 43) [redacted] (SOF 5, 13, 18-20) [redacted] (SOF 42-43), and there is no evidence he made any effort on or off the Internet to sell goods or services under "swagair" rather than under his

personal name. What use Plaintiff did make of his "swagair" social media names on Twitter, Instagram and Facebook [redacted], and he used these sites for personal posts. (SOF 40, 41) [redacted] (SOF 44-45) [redacted] (SOF 46-47) The producer of this film was Daniel Poneman, not "swagair." (SOF 48)

In sum, there is no evidence from which Plaintiff can argue he did anything that created meaningful consumer recognition of the term "swagair," whether in Chicago or elsewhere, as the source of any goods such as t-shirts or of any services that consumers could actually purchase. Lacking any such enforceable trademark rights, Plaintiff's claims fail as a matter of law.

**C. Defendants' Use of "swag air" Was Not Likely to Cause Confusion**

Even if Plaintiff was able to demonstrate enforceable trademark rights, his claims would fail for the additional reason that there is no likelihood of confusion between Defendant's use of Swag Air on t-shirts and Plaintiff's minimal use as described above.

Courts in the Seventh Circuit analyze the following seven factors when considering the likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *see also Packman*, 267 F.3d at 643. No single factor is decisive and courts may assign varying weight to each factor, but the similarity of the marks, the intent of the defendant, and evidence of actual confusion are usually the most important considerations. *Tsiolis v. Interscope Records*, 946 F. Supp. 1344, 1353 (N.D.

Ill. 1996); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000). Application of the likelihood of confusion factors here weighs heavily in favor of summary judgment.

While Plaintiff alleges both reverse and forward confusion, [redacted] (SOF 70) To prove reverse confusion, Plaintiff must show that Defendants' sale of the NIKE t-shirt was likely to cause confusion as to the source of Plaintiff's purported goods or services. *Tsiolis*, 946 F. Supp. at 1353 (analyzing a reverse confusion claim). Reverse confusion protects against the risk of losing the value of the senior user's mark, with respect to product or corporate identity, control over goodwill and reputation, and the ability to enter into new markets. *Wm. Wrigley Jr. Co., v. Swerve IP, LLC*, 900 F.Supp.2d 794, 799 (N.D. Ill. 2012). In this case, Plaintiff had no products, goodwill or reputation to lose, and no credible plans to enter into new markets, as he had changed direction away from his "swagair" business plans at least a year before the NIKE t-shirt appeared. Moreover, application of the likelihood of confusion factors confirms that reverse confusion cannot be found.

**1. Marketplace Uses of the Terms Not Similar in Appearance**

The differences between the respective t-shirts are substantial. Courts should compare the marks "in light of what happens in the marketplace, [and] not merely by looking at the two marks side-by-side." *Ty, Inc.*, 237 F.3d at 898-99; *Humanly Possible, Inc. v. Manpower, Inc.*, No. 11 C 4977, 2013 WL 633332, at *5 (N.D. Ill. Feb. 19, 2013).

Plaintiff's t-shirt use of "swagair" was always accompanied by other prominent phrases (Daniel Poneman's and A DP B-BALL Production) and designs, including his silhouette. (SOF 21)




The NIKE t-shirt differed dramatically in appearance:




The wording on the NIKE t-shirt is stacked vertically as two separate words "swag" and "air" and located immediately above NIKE's famous house mark and Swoosh design. (SOF 58) The font in which the wording appears is a font that NIKE had used for many years. (SOF 59) Furthermore, in addition to appearing on the front of the shirt, the t-shirts bore hang-tags displaying the NIKE marks and a neckband tag also displaying NIKE's marks. (SOF 60) NIKE's use of "air" as a stand-alone word below "swag" further helped to identify NIKE as the source of the NIKE t-shirt. (SOF 58)

These differences require a finding of no reverse confusion. *Tsiolis*, 946 F. Supp. at 1353-54 (prominent display of different names reduced likelihood of confusion "even where ... the marks are otherwise similar").

[redacted] (SOF 29, 32, 37, 38, 39)

**2. No similarity in products**

By the time the NIKE t-shirt was first sold in March 2013, [redacted]

[redacted] (SOF 23, 26, 41, 43), so there could not be any similarity to Defendants' t-shirts. Even if Plaintiff points to his showcase t-shirts, those t-shirts were never sold separately to consumers but were part of a service that Plaintiff briefly and sporadically provided – the operation of a showcase – and that service was clearly operated in close association with Plaintiff's personal name.

**3. No overlap in the area and manner of the parties' concurrent use**

When considering the area and manner of concurrent use, courts assess whether "there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Ty, Inc.*, 237 F.3d at 900. Defendants sold the NIKE t-shirt through various brick and mortar and Internet retail outlets. (SOF 61-62) [redacted] (SOF 23, 26, 41) *See Sullivan v. CBS Corp.*, 385 F.3d 772, 779 (7th Cir. 2004) (no likelihood of confusion where plaintiff, owner of mark SURVIVOR for a band, sold t-shirts bearing SURVIVOR mark only at the band's concerts, and defendant, producer of the television show "Survivor," sold t-shirts and CDs through other outlets).

The lack of proximity between Plaintiff's use of "swagair" on t-shirts and elsewhere and Defendants' NIKE t-shirt is corroborated by Plaintiff's admission that he could not identify a single opportunity that he lost as a result of the NIKE t-shirt. (SOF 76) *S Indus., Inc. v. JL Audio, Inc.*, 29 F. Supp. 2d 878, 891–92 (N.D. Ill. 1998) (finding that a lack of evidence of direct competition between the parties' products supported a lack of overlap in their area and manner of use).

**4. Plaintiff's asserted common law mark is weak**

The strength of a mark refers to the distinctiveness of the mark and its propensity to identify the source of goods sold under the mark, and it is assessed by evaluating the overall

economic and market strength of the mark. *Eli Lilly*, 233 F.3d at 464; *AutoZone*, 543 F.3d at 933. Although the frequency with which a mark is displayed and the amount of advertising dollars used to promote the mark are relevant when determining the mark's strength, "[t]he only ways to directly prove the public's evaluation of a mark is via customer testimony and consumer surveys. *Flagstar Bank, FSB v. Freestar Bank*, 687 F.Supp.2d 811, 832 (C.D. Ill. 2009) (citing *Gimix Inc. v. JS & A Group Inc.*, 699 F.2d 901, 907 (7th Cir. 1983)). Plaintiff's failure to consistently use his claimed mark and to advertise any goods or services under that mark underscore its weakness.

[redacted] (SOF 9), [redacted] (SOF 8, 52) Plaintiff's adoption of "swagair" is just one of many coexisting uses of the term "swag" in connection with apparel. (SOF 52-53, 63-67) Some of these third-party uses, like NIKE's own use of "SWAGGER," predate Plaintiff's use of "swagair." (SOF 52-53) In addition, there are at least three registered marks that include "swag" for use on apparel items. (SOF 67) [redacted] (SOF 9-10, 49-53, 66-67) With so many uses of "swag" in connection with apparel items, "swagair" is exceedingly weak and consumers "will not likely be confused between two of the crowd and may have learned to carefully pick out one from the other." 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §11:85 (4th ed. 2015); *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1003 (N.D. Ill. 1997) (numerous third party uses undermined the strength of the asserted mark).

### 5. There is no credible evidence of actual confusion

Plaintiff's purported actual confusion evidence fails to support a likelihood of confusion. [redacted] (SOF 71) [redacted]

- [redacted] (SOF 72)
- [redacted] (SOF 73)

[redacted] (SOF 75) [redacted] (SOF 75)

[redacted] (SOF 74), making the statements inherently weak as evidence of confusion. *Packman,* 267 F.3d at 645 (rejecting evidence of phone calls from plaintiff's friends, family and former co-worker as evidence of actual confusion); *Hydrox Chem. Co. v. Diversey Inc.*, No. 1:13-cv-07024, 2015 U.S. Dist. LEXIS 36276, at *41 (N.D. Ill. Mar. 23 2015) (rejecting testimony of plaintiff's friend).

Not only does Plaintiff lack any credible evidence of actual confusion, he has not provided any survey evidence of confusion. [redacted] (SOF 69) The failure to provide survey evidence tends to support the conclusion that confusion is not likely. *See G. Heileman Brewing Co. v. Anheuser – Busch, Inc.*, 873 F.2d 985, 1000 (7th Cir. 1989) (plaintiff's failure to conduct a consumer survey supported a finding of no likelihood of confusion).

In contrast, [redacted]

[redacted] (SOF 68) [redacted] (SOF 68) These percentages are so low that they strongly indicate there is no likelihood of confusion. *G. Heilman Brewing Co., 873 F.2d at 1000* (7th Cir. 1989) (finding a 4.5% result weighed against a likelihood of confusion).

The lack of any credible evidence from Plaintiff and Defendant's strong survey evidence also weigh in favor of a finding of no likelihood of confusion.

**6. Defendants had no intent to overwhelm Plaintiff's claimed mark**

In the reverse confusion context, the intent factor focuses on whether the junior user knew of the senior user's similar mark but proceeded anyway. *Hydrox Chem. Co.*, 2015 U.S. Dist. LEXIS 36276 at *14. [redacted] (SOF 56-57) There is no evidence of knowledge that Plaintiff was using the term as a trademark to offer any goods or services. [redacted] (SOF 42-48)

**7. Degree of care likely to be exercised by consumers**

Courts analyze the nature of the purchasing decision (i.e. the reason or motivation for the purchase) in order to determine the degree of care that consumers will exercise. *Tsiolis*, 946 F.Supp at 1355-56. Plaintiff presented no evidence to indicate the degree of care his purported customers, if any, exercised when choosing to participate in those showcases. Conversely, Defendants' evidence demonstrates that consumers seeking to purchase the NIKE t-shirt and similar shirts from Foot Locker and other retail outlets are sophisticated in that they are fans of

the NIKE brand and know they can find NIKE products at Foot Locker. (SOF 77)

**8. Summary regarding reverse confusion**

By the time the NIKE t-shirt was first available in 2013, Plaintiff had long since stopped his activities relating to "swagair." Thus, even if he had created enforceable rights in the term, application of the likelihood of confusion factors demonstrates that he cannot prove a likelihood of any reverse confusion that could have affected whatever minimal goodwill or value he claims to have created in the term "swagair."

Moreover, a central issue in reverse confusion cases often is whether the junior user's use of the disputed mark overwhelmed the senior user's use of its purported mark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958-599 (7th Cir. 1992). [redacted], and by the time Defendants started selling the NIKE t-shirt in 2013, [redacted] (SOF 26, 41-48) Plaintiff was not making any use of his claimed mark; there was nothing to overwhelm.

**9. Plaintiff Fails to Prove Forward Confusion**

[redacted] (SOF 70), Plaintiff's claims similarly fail under a forward confusion analysis. In a forward confusion claim, the focus of some of the likelihood of confusion factors, particularly strength of the Plaintiff's claimed mark and the Defendants' intent, are slightly different. Nevertheless, these factors still favor Defendants. Plaintiff's infrequent and inconsistent use of his claimed mark, and his abandonment of the business he planned to provide under that mark, rendered the mark so weak that consumers were never likely to believe a t-shirt bearing the words "Swag Air" with NIKE's famous Swoosh and NIKE marks came from the Plaintiff. Similarly, with respect to intent, there is no evidence that NIKE was aware of any

products being sold by Plaintiff – indeed, there were none – and therefore there could be no intent to pass off the NIKE t-shirts as coming from Plaintiff. *See Packman*, 267 F.3d at 643 (analyzing a forward confusion claim).

## IV. CONCLUSION

Plaintiff cannot present evidence sufficient to create a genuine issue of fact as to (1) ownership of a protectable common law trademark as of March 2013, when Defendants first sold the NIKE t-shirt, or (2) any likelihood of confusion between Plaintiff's sporadic and inconsistent uses of "swagair" and Defendants' sale of the NIKE t-shirt. Therefore, Defendants respectfully request that this Court grant summary judgment in their favor on each of Plaintiff's claims.

Respectfully submitted,

*/s/* Joshua S. Frick

Dated: September 25, 2015

David S. Fleming (Illinois Bar No. 6180222)
Christopher M. Dolan (Illinois Bar No. 6269648)
Joshua S. Frick (Illinois Bar No. 6292843)
Brinks Gilson & Lione
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611
(312) 321-4200

***Attorneys for Defendants***
***NIKE, Inc. and Foot Locker, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015, a copy of the foregoing was served on Plaintiff's counsel of record listed below via Federal Express and by electronic means pursuant to the court's Electronic Case Filing (ECF) system:

Alejandro Menchaca
amenchaca@mcandrews-ip.com
MCANDREWS, HELD, & MALLOY, LTD.
500 W. Madison Street
34th Floor
Chicago, Illinois 60661
(312) 775-8000

Brian D. Melton, Esq.
BMelton@SusmanGodfrey.com
Moustapha El-Hakam
melhakam@SusmanGodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
(713) 651-9366

*/s/ Joshua S. Frick*